## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

LORETTA LYNN HALL, *et al.*,            *

     Plaintiffs,            *

                                             Civil Action No. RDB-19-3005

     v.            *

STATE OF MARYLAND, *et al.*,            *

                     *

     Defendants.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

This case arises from the October 10, 2016 murder of Benjamin Andrew Hall ("Decedent" or "Mr. Hall"), an inmate at Maryland Correctional Institution – Hagerstown ("MCIH") by his cellmate Mark Andrew Topper ("Mr. Topper"). Plaintiffs Loretta Lynn Hall ("Ms. Hall"), the Decedent's mother and the personal representative of the Estate of Benjamin Andrew Hall, and Decedent's three minor children, "LD," "IB," and "OH" (collectively, "Plaintiffs"), instituted this action in the Circuit Court for Washington County, Maryland. Named Defendants are: the State of Maryland, the former Secretary of the Department of Public Safety and Correctional Services Stephen T. Moyer ("Secretary Moyer"), the Warden of MCIH Denise Gelsinger ("Warden Gelsinger"), the Assistant Warden of MCIH Keith Lyons ("Assistant Warden Lyons"), Lieutenant Steve Thomas ("Lt. Thomas"), Lieutenant Ryan Sullivan ("Lt. Sullivan"), Sergeant Bradley Rose ("Sgt. Rose"), and Correctional Officers Cody Nelling ("CO Nelling"), Dean Vosburgh ("CO Vosburgh"), Eric Fischer ("CO Fischer"), and Ronald Jackson ("CO Jackson") (collectively, "Defendants"). Plaintiffs assert federal constitutional claims against the individual Defendants (Count I), state constitutional

claims against all Defendants (Count II), and state law claims for wrongful death (Count III) and survivorship (Count IV) against all Defendants.  (Compl., ECF No. 1-2.)  Based upon the federal constitutional claims, Defendants timely removed the case to this Court. (Notice of Removal, ECF No. 1.)

Presently pending is Defendants' Motion to Dismiss.  (ECF No. 37.)  The parties' submissions have been reviewed, and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2018).  For the reasons that follow, Defendants' Motion to Dismiss (ECF No. 37) shall be GRANTED.  Specifically, Count I, setting forth federal constitutional claims, will be DISMISSED WITHOUT PREJUDICE with respect to the individual Defendants; Counts II, III, and IV, asserting state claims, will be DISMISSED WITHOUT PREJUDICE as to the Defendant State of Maryland; and Counts II, III, and IV will be DISMISSED WITH PREJUDICE as to the individual Defendants.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff."  *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)).  The Court may consider only such sources outside the complaint that are, in effect, deemed to be part of the complaint, for example, documents incorporated into the complaint by reference and matters of which a court may take judicial notice.  *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

In 2013, Decedent Benjamin Andrew Hall was convicted in Maryland state court of theft and was sentenced to seven years' incarceration.  (Compl. ¶ 19, ECF No. 1-2.)  Mr. Hall

began his incarceration at Eastern Correctional Institution ("ECI") at the age of 23.   (*Id.* ¶ 20.)   Plaintiffs allege that, shortly into Mr. Hall's incarceration at ECI, he was attacked by another inmate, alleged to be African-American.   (*Id.* ¶ 22.)   Following the attack, Plaintiffs allege that the Aryan Brotherhood ("AB"), a "neo-Nazi prison gang and organized crime syndicate," offered security and protection to Mr. Hall, who was White.   (*Id.*)   On or about December 12, 2015, Mr. Hall was transferred to the Jessup Correctional Institution ("JCI"). (*Id.* ¶ 23.)   On or about August 11, 2016, Mr. Hall was again transferred to the Maryland Correctional Institution – Hagerstown ("MCIH").   (*Id.* ¶ 25.)

On or about August 14, 2016, Plaintiffs allege that members of the AB fatally stabbed a member of the AB's rival gang inside the Jessup Correctional Institution.   (*Id.* ¶¶ 27-30.) Plaintiffs allege that Mr. Hall told his mother, Plaintiff Ms. Hall, that he knew who was responsible for the murder, that members of the AB believed Mr. Hall was cooperating with the authorities investigating the murder, and that the AB members wanted Mr. Hall killed "because they believed him to be a 'snitch.'"   (*Id.* ¶ 56.)   Plaintiffs allege that Ms. Hall left voicemails for Warden Gelsinger and the Chaplain at MCIH, but that Warden Gelsinger never returned Ms. Hall's calls.   (*Id.* ¶¶ 57-58.)

On or about August 15, 2016, Mr. Hall was placed in administrative segregation "due to concerns for his safety" because Plaintiffs allege that "MCIH determined there was to be no contact between members of the [Aryan Brotherhood]" and its rival gang.   (*Id.* ¶¶ 31-33.) On or about August 19, 2016, Mr. Hall was allegedly attacked and injured by members of the rival gang in the presence of MCIH correctional officers while he was handcuffed.   (*Id.* ¶ 34.) Plaintiffs allege that Mr. Hall submitted an administrative grievance about the attack,

"complain[ing] in his grievance that he was struck in the shoulder by 'some kind of steele [sic] inside of a sock' and was denied medical care." (*Id.* ¶¶ 35-42.)  Mr. Hall's grievance was allegedly dismissed "for 'procedural reasons'" and he "was instructed to resubmit his grievance by October 14[, 2016] with additional information." (*Id.* ¶¶ 40-41.)  Mr. Hall did not resubmit a grievance prior to his death. (*Id.* ¶ 42.)

Plaintiffs allege that another inmate, Mark Andrew Topper ("Mr. Topper"), became Mr. Hall's cellmate on either August 19, 2016 or September 22, 2016. (*Id.* ¶¶ 44-46.)  Mr. Hall allegedly refused various potential cellmates "because they were 'not one of [his],'" but that Mr. Hall "agreed for Mr. Topper to move in" with him. (*Id.* ¶¶ 46-48.)  Mr. Hall allegedly told his mother about Mr. Topper's placement in his cell, that he believed Mr. Topper was "prospecting" with the Aryan Brotherhood, and that Warden Gelsinger told Mr. Hall that Mr. Topper would be placed in his cell "temporarily." (*Id.* ¶¶ 49-50.)  Plaintiffs also allege that Mr. Topper was not a member of or affiliated with any gangs but that he had been assigned to disciplinary segregation. (*Id.* ¶ 52.)

On or about October 2, 2016, Mr. Hall allegedly called his mother and told her that he had intercepted a message passed amongst inmates that the Aryan Brotherhood "had ordered a hit" on Mr. Hall and that Mr. Topper was planning to kill him to get initiated into the Aryan Brotherhood. (*Id.* ¶¶ 54-55, 59.)  Plaintiffs allege that this telephone call was terminated by MCIH, "indicating officials were listening to their conversation and…overheard Decedent's fears that Mr. Topper would kill him." (*Id.* ¶ 59.)

On the night of October 10, 2016, Mr. Hall and Mr. Topper were allegedly drinking alcohol in their cell and each drank at least four cups of alcohol. (*Id.* ¶¶ 60-61.)  Plaintiffs

allege that Defendant Correctional Officer Nelling ("CO Nelling") had conducted a scheduled tier walk at 10:00 p.m. and that Mr. Hall and Mr. Topper were "alive and fine" at that time. (*Id.* ¶ 68.)  Subsequently, Mr. Hall and Mr. Topper allegedly got into an argument when Mr. Hall started "'running his mouth' about 'his brothers.'"  (*Id.* ¶¶ 61-62.)  Mr. Hall allegedly put his hands in Mr. Topper's face and Mr. Topper pushed Mr. Hall away.  (*Id.* ¶ 63.)  Mr. Hall then punched Mr. Topper in the face, knocking Mr. Topper's tooth out.  (*Id.* ¶ 64.)  According to Plaintiffs, by Mr. Topper's own account, Mr. Topper "went 'berserk' and used his hands and feet to beat Decedent to death."  (*Id.* ¶ 65.)  At approximately 10:30 p.m., during his next scheduled tier walk, CO Nelling discovered Mr. Hall lying chest up in a large puddle of blood with a bloody white t-shirt covering his face and Mr. Topper standing over Mr. Hall's body. (*Id.* ¶ 66.)  Upon this discovery, CO Nelling radioed for backup, medical personnel were called, and the nurse "responded immediately and confirmed [Mr. Hall] was dead."  (*Id.* ¶¶ 69-70.) Meanwhile, Mr. Topper, "intoxicated" and "wearing boots and a fresh shirt," was allegedly cuffed and removed from the cell.  (*Id.* ¶¶ 71-72.)

Plaintiffs allege that Mr. Topper reported to the authorities that he had hit Mr. Hall, slammed him against the wall, and held him down, "stomping his head, throat, and chest," until Mr. Hall stopped breathing.  (*Id.* ¶ 76.) Mr. Topper also allegedly used a sharpened scrabble piece during the attack which he flushed down the toilet before CO Nelling arrived. (*Id.*)  The Office of the Chief Medical Examiner performed an autopsy on Mr. Hall, concluding that the manner of death was homicide and that the time of injury was 10:00 p.m. on the evening of October 10, 2016.  (*Id.* ¶¶ 77-78.)

On September 13, 2019, Plaintiffs filed this action in the Circuit Court for Washington County, Maryland. (ECF No. 1-2.) Based on the federal constitutional claims asserted in Count I, Defendants removed the case to this Court on October 15, 2019. (ECF No. 1.) Defendants subsequently filed the presently pending Motion to Dismiss. (ECF No. 37.)

## STANDARD OF REVIEW

A motion to dismiss for failure to state a claim is governed by Rule 12(b)(6), which authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006); *see also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016). The sufficiency of a complaint is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009).

While ruling on motion to dismiss, a court's evaluation is generally limited to allegations contained in the complaint. *Goines v. Calley Cmty. Servs. Bd.*, 822 F.3d 159, 166-67 (4th Cir. 2016). However, courts may also consider documents explicitly incorporated into the complaint by reference. *Id.* at 166 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). In addition, a court may "consider a document submitted by the movant that

6

was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* (citing *Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F.Supp.2d 602, 611 (D. Md. 2011) (citation and emphasis omitted). Considering such documents does not convert a motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

## ANALYSIS

Plaintiffs assert violations of the federal Constitution and Maryland's constitution, in addition to asserting state law claims for wrongful death and survivorship.  Plaintiffs' federal claims under Count I will be dismissed without prejudice because Plaintiffs have failed to allege that the individual Defendants violated the Eighth and Fourteenth Amendments. Further, this Court will exercise its supplemental jurisdiction over Plaintiffs' state claims under Counts II, III, and IV for the purposes of judicial efficiency.  The Court will dismiss those claims without prejudice as to the Defendant State of Maryland but the claims will be dismissed with prejudice as to the individual Defendants.

### I.      Federal Constitutional Claims (Count I)

Plaintiffs allege that the individual Defendants, specifically Secretary Moyer, Warden Gelsinger, Assistant Warden Lyons, Lieutenant Thomas, Lieutenant Sullivan, Sergeant Rose, and Correctional Officers Nelling, Vosburgh, Fischer, and Jackson, violated Decedent Hall's Eighth and Fourteenth Amendment rights, and seek damages for these violations pursuant to

42 U.S.C. § 1983.  Specifically, Plaintiffs assert that Decedent Hall was subjected to serious harm resulting in death in violation of the Eighth Amendment's right to be free from "cruel and unusual punishment," and that Mr. Hall was deprived of "life and liberty without due process of law" under the Fourteenth Amendment.  (Compl. ¶¶ 87-90, ECF No. 1-2.)

Under 42 U.S.C. § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person with the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured ...." § 1983.  Section 1983 does not create "substantive rights"; rather, it provides "a method for vindicating federal rights elsewhere conferred." *Thompson v. Dorsey*, ELH-10-1364, 2011 WL 2610704, at *3 (D. Md. June 30, 2011) (quoting *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)).

### A. Eighth Amendment

The Eighth Amendment charges prison officials with "certain basic duties." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016).  To fulfill their Eighth Amendment obligations, officials must ensure "humane conditions of confinement" and implement "reasonable measures to guarantee the safety of the inmates." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  Because "being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society," prison officials "have 'a duty to protect prisoners from violence at the hands of other prisoners.'" *Id.* (quoting *Farmer*, 511 U.S. at 832, 834, 114 S.Ct. 1970).  "[N]ot every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison

officials responsible for the victim's safety," however. *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970). For liability to attach, plaintiffs must satisfy a two-part test containing objective and subjective elements. *Makdessi*, 789 F.3d at 133.

Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or the substantial risk thereof. *Danser v. Stansberry*, 772 F.3d 340, 346-47 (4th Cir. 2014). To establish liability arising from a failure to protect claim, the plaintiff must demonstrate that he was "incarcerated under conditions posing a substantial risk of serious harm." *Makdessi*, 789 F.3d at 133. The risk must be of such a kind that society deems it "so grave that it violates contemporary standards of decency." *Raynor*, 817 F.3d at 127 (quoting *Helling v. McKinney*, 509 U.S. 25, 36, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993)).

The subjective component requires an inmate to demonstrate "that the prison official had a 'sufficiently culpable state of mind,' which ... consists of 'deliberate indifference to inmate health or safety.'" *Raynor*, 817 F.3d at 127 (quoting *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970). The plaintiff must prove that the official had actual knowledge of an excessive risk of serious harm, or that he was aware of facts from which he could draw the inference that a substantial risk of serious harm existed, and in fact did draw that inference. *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970. This knowledge may be proved "in the usual ways, including inference from circumstantial evidence." *Raynor*, 817 F.3d at 128 (citation omitted).

Plaintiffs fail to allege that any of the individual Defendants acted with deliberate indifference to Mr. Hall's safety or that the individual Defendants had actual knowledge of

9

any excessive risk or harm to Mr. Hall.  According to the Complaint, Mr. Hall was placed in administrative segregation at MCIH "due to concerns for his safety" because "MCIH determined there was to be no contact between members of the [Aryan Brotherhood]" and its rival gang.  (*Id.* ¶¶ 31-33.)  Plaintiffs' assertion that the individual Defendants acted with deliberate indifference by placing Mr. Topper in Mr. Hall's cell is unsupported by Plaintiffs' own allegations that Mr. Hall approved of the placement after rejecting other potential cellmates and that Mr. Topper was not a member of or affiliated with any gangs.  (*Id.* ¶¶ 31-33, 44-48.)  The circumstances of the murder also negate any indication that the individual Defendants were deliberately indifferent to Mr. Hall's safety.  On the night of the murder, both Mr. Hall and Mr. Topper were allegedly drinking alcohol and were "alive and fine" at 10:00 p.m. during Defendant Correctional Officer Nelling's scheduled tier walk.  (*Id.* ¶¶ 60-61, 68.)  When CO Nelling discovered Mr. Hall's body at 10:30 p.m. during his next scheduled tier walk, he called medical personnel and radioed for backup.  (*Id.* ¶¶ 66-69.)  A nurse "responded immediately and confirmed [Mr. Hall] was dead."  (*Id.* ¶¶ 69-70.)  There are no allegations that the individual Defendants heard any sounds of a struggle by Mr. Hall or Mr. Topper.  Consequently, Plaintiffs' allegations refute any assertion that the individual Defendants acted with deliberate indifference towards Mr. Hall's safety.

Plaintiffs also fail to present any factual allegations that adequately connect any alleged tortious actions or relevant knowledge with any individual Defendant.  The Complaint is completely devoid of allegations that any individual Defendant was aware of a problem that Mr. Hall had with Mr. Topper.  While Plaintiffs allege that Mr. Hall told his mother that the Aryan Brotherhood wanted to kill him and that his mother left voicemails for Warden

10

Gelsinger, Plaintiffs do not allege that Warden Gelsinger listened to the voicemails nor do they specify the content of the voicemails. (*Id.* ¶¶ 56-58.) Plaintiffs speculate that when MCIH terminated a call between Mr. Hall and his mother, prison officials "were listening to their conversation and… overheard Decedent's fears that Mr. Topper would kill him." (*Id.* ¶ 59.) Such speculation, even if true, is inadequate to state a claim as Plaintiffs do not allege that any of the individual Defendants heard this conversation or were aware of Mr. Hall's fears. Finally, there are no allegations that Mr. Topper was involved in a "longstanding, pervasive, [or] well documented" history of attacks on other inmates. *See Makdessi*, 789 F.3d at 133 (quoting *Farmer*, 511 U.S. at 842).

In sum, there is absolutely no indication that Warden Gelsinger or any other prison official at MCIH were aware of any danger that Mr. Topper posed to Mr. Hall. Such deficiencies are fatal to Plaintiffs' claim. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (plaintiff must allege that "the official charged acted personally in the deprivation of the plaintiffs' rights") (citations omitted).

**B. Fourteenth Amendment**

Plaintiffs allege that Defendants also violated Mr. Hall's Fourteenth Amendment "right to be free from the deprivation of life and liberty without due process." U.S. Const. Amend. XIV. This claim is based on Mr. Topper's murder of Mr. Hall and stems from the Eighth Amendment claim outlined above. Plaintiffs do not allege any procedural due process claim and any substantive due process claim is "essentially equivalent to an Eighth Amendment claim." *See Walker v. Maryland*, Civil Action No. MJG-16-3136, 2017 WL 3730349, at *7 (D. Md. Aug. 30, 2017) (citing *Hill v. Nicodemus*, 979 F.2d 987, 990-91 (4th Cir. 1992); *Brown v.*

*Harris*, 240 F.3d 383, 388 (4th Cir. 2001); *King-Fields v. Leggett*, No. CIV.A. ELH-11-1491, 2014 WL 694969, at *10 (D. Md. Feb. 19, 2014)).

A substantive due process claim requires a plaintiff to establish that a defendant abused executive power in a way that "shocks the conscience." *Id.* (citing *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998). The Eighth Amendment's deliberate indifference standard may "satisfy the fault requirement for due process claims." *Id.* (quoting *Cty. of Sacramento*, 523 U.S. at 850). Accordingly, as Plaintiffs have failed to allege that the individual Defendants exhibited a deliberate indifference to Mr. Hall's safety or knew about any risk to Mr. Hall, Plaintiffs fail to allege that Mr. Hall's substantive due process rights were violated for the same reasons that Plaintiffs fail to allege an Eighth Amendment violation. Consequently, Plaintiffs' federal constitutional claims (Count I) will be dismissed **without prejudice**.[1]

## II.      State Claims (Counts II, III, and IV)

Although Plaintiffs' federal claims are dismissed, the Court will exercise its supplemental jurisdiction over Plaintiffs' remaining state claims pursuant to 28 U.S.C. § 1367. *See Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) ("trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished"). Plaintiffs assert claims under the Maryland Declaration of Rights Articles 24 and 26 (Count II), in addition to state law claims of wrongful death (Count III) and survivorship (Count IV).

### A.  State constitutional claims (Count II)

---

[1] This Court will not address Defendants' qualified immunity defense because no constitutional violation has been sufficiently alleged.

Article 24 of the Maryland Declaration of Rights provides, "no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property…." Md. Const. Decl. of Rights art. XXIV. Article 26 provides, "all warrants, without oath or affirmation,…to seize any person or property, are grievous and oppressive…." Md. Const. Decl. of Rights. Art. XXVI. Plaintiffs' state constitutional claims under Maryland's Declaration of Rights are construed *in pari materia* to the Fourth and Fourteenth Amendment to the United States Constitution. *See Miller v. Prince George's County*, 475 F.3d 621, 631 n.5 (4th Cir. 2007) ("state constitutional claims under Articles 24 and 26 of the Maryland Declaration of Rights are construed *in pari materia* to…Fourth Amendment claim[s]."); *Pickett v. Sears, Roebuck & Co.*, 775 A.2d 1218, 1224 (2000) ("This Court has interpreted Article 24 of the Maryland Declaration of Rights and the Due Process clause of the Fourteenth Amendment of the United States Constitution to be *in pari materia*.").

While Plaintiffs do not assert a Fourth Amendment violation, the substance of their claims seems to fall under Article 25 of the Maryland Declaration of Rights, which is the state analogue to the Eighth Amendment. Article 25 provides, "excessive bail ought not to be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted…." Md. Const. Decl. of Rights art. XXV. Accordingly, Plaintiffs' state constitutional claims under Count II are construed *in pari materia* to their Eighth and Fourteenth Amendment claims under Count I and will be dismissed without prejudice as to the State of Maryland but **with prejudice** as to the individual Defendants for the reasons set forth below.

### B. Individual Defendants' statutory immunity

The individual Defendants are entitled to statutory immunity on Plaintiffs' state law claims (Counts II, III, and IV) pursuant to the Maryland Tort Claims Act ("MTCA"). The MTCA affords immunity to state officials for tortious acts or omissions "committed within the scope of their duties when the violations are made 'without malice or gross negligence.'" *Housley v. Holquist*, 879 F. Supp. 2d 472, 482–83 (D. Md. 2011) (quoting *Lee v. Cline*, 863 A.2d 297, 304 (Md. 2004)). In this context, "malice" means "actual malice" or "conduct 'characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud.'" *Lee v. Cline*, 384 Md. 245, 268, 863 A.2d 297, 311 (2004).

"[A]n officer's actions are grossly negligent 'when they are 'so heedless and incautious as necessarily to be deemed unlawful and wanton, manifesting such a gross departure from what would be the conduct of an ordinarily careful and prudent person under the same circumstances so as to furnish evidence of indifference to consequences.'" *Housley v. Holquist*, 879 F. Supp. 2d 472, 482-83 (D. Md. 2011) (quoting *Henry v. Purnell*, 652 F.3d 524, 536 (4th Cir. 2011)). Plaintiffs asserting malice are held to a high pleading standard that may not be satisfied by conclusory allegations. *See Elliott v. Kupferman*, 58 Md. App. 510, 528, 473 A.2d 960 (1984) ("[m]erely asserting that an act was done maliciously, or without just cause, or illegally, or for improper motive does not suffice. To overcome a motion raising governmental immunity, the plaintiff must allege with some clarity and precision those facts which make the act malicious); *Hovatter v. Widdowson,* No. CCB–03–2904, 2004 WL 2075467, at *7 (D.Md. Sept.15, 2004) ("although the amended complaint repeatedly states that all of the defendants acted with malice towards [Plaintiff] ... these bare legal conclusions are not binding on the court.").

14

Plaintiffs do not dispute that the individual Defendants qualify as "state personnel" for the purposes of MTCA immunity.  Plaintiffs generally assert, however, that Defendants acted with malice and were grossly negligent.  Such assertions do not satisfy the high pleading standard required to defeat the individual Defendants' assertion of statutory immunity under the MTCA. Indeed, the Complaint is completely devoid of any allegations that the individual Defendants acted with gross negligence or with malice in placing Mr. Topper in Mr. Hall's cell.  Instead, the allegations reflect that Mr. Hall had been placed on administrative segregation based on concerns about gang activity between the Aryan Brotherhood and its rival gang, that Mr. Hall approved of Mr. Topper as his cellmate, and that Mr. Topper was not affiliated with or a member of any gang.  (Compl. ¶¶ 31-33, 44-48.)  Further, when Correctional Officer Nelling discovered Mr. Hall's body, he called for backup and a nurse immediately arrived to render assistance.  (*Id.* ¶¶ 66-70.)  There is nothing in the Complaint that reflects that any of the individual Defendants acted in an unreasonable manner, let alone that they acted with actual malice.  As a result, the individual Defendants are entitled to statutory immunity on Counts II, III, and IV.[2]  Accordingly, Counts II, III, and IV are dismissed **with prejudice** as to the individual Defendants.

### C. State Law Claims for Wrongful Death and Survivorship against the State (Counts III and IV)

While the Maryland Tort Claims Act provides immunity from tort liability for state personnel, it waives sovereign immunity against the State itself for actions that do not involve malice or gross negligence, and which are committed "within the scope of the public duties of

---

[2] The Court will not address Defendants' public official immunity defense because the Court finds that the individual Defendants are entitled to statutory immunity.

the State personnel." *See* Md. Code Ann., State Gov't §§ 12-101 – 110, Cts. & Jud. Proc. § 5-522(a)(4)-(a)(5).   In other words, "the State has accepted vicarious liability arising from the tortious conduct of state personnel." *Ford v. Baltimore City Sheriff's Office*, 149 Md. App. 107, 120 (2002); *see also Robinson v. Pytlewsi*, Civil Action No. 8:19-cv-01025-PX, 2020 WL 607030, at *9 (D. Md. Feb. 7, 2020) ("in Maryland, the State is subject to suits sounding in tort"). Accordingly, while statutory immunity does not apply to the Defendant State of Maryland for tortious acts committed by its employees, Plaintiffs nonetheless fail to state tort claims for wrongful death and survivorship against the State.

While claims for wrongful death and survivorship are distinct, they arise from the same set of facts and theories of negligence and are analyzed together.   *See Munger v. United States*, 116 F. Supp. 2d 672, 676 (D. Md. 2000).   As the basis for both counts, Plaintiffs allege that Defendants were negligent by failing to "provide adequate security measures" for Mr. Hall at MCIH.   (Compl. ¶¶ 95-100.)   To state a claim for negligence under Maryland law, a plaintiff must show, "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Muthukumarana v. Montgomery Cty.*, 370 Md. 447, 486 (2002) (quoting *Valentine v. On Target Inc.*, 353 Md. 544, 549 (1999)).

Plaintiffs have failed to allege that any of the State personnel were negligent in placing Mr. Topper in Mr. Hall's cell or in rendering care to Mr. Hall.   Instead, Plaintiffs' allegations reflect that the state officers placed Mr. Hall in administrative segregation for his safety, that Mr. Hall approved of Mr. Topper's placement in his cell, and that Mr. Topper was not affiliated

with any gangs.  (Compl. ¶¶ 31-33, 46, 60, 62.)  Plaintiffs fail to allege how the State breached

its duty of care when the allegations show that the prison officials took active measures to

protect Mr. Hall and provided immediate medical care when he was found unresponsive.  (*Id.*

¶¶ 66-69.)  Consequently, Counts II, III, and IV are dismissed **without prejudice** as to the

Defendant State of Maryland.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss (ECF No. 37) is

GRANTED.  Specifically, Count I, asserting federal claims against the individual Defendants,

is DISMISSED WITHOUT PREJUDICE; Counts II, III, and IV are DISMISSED

WITHOUT PREJUDICE as to the Defendant State of Maryland; and Counts II, III, and IV

are DISMISSED WITH PREJUDICE as to the individual Defendants.

A separate Order follows.


Dated: September 22, 2020


_____/s/_____
Richard D. Bennett
United States District Judge

17